Professional Business Management, Inc., an Illinois Corporation, Plaintiff-Appellee, v. John J. Clark, Defendant-Appellant.

Gen. No. 66-98.

Third District.

May 25, 1967.

Rehearing denied July 5, 1967.

William Parker Ward, of Chicago, for appellant.

A. William Razzano, of Watseka, and Stephen M. Herman, of Chicago, for appellee.

CORYN, J.

Plaintiff, Professional Business Management, Inc., (hereinafter called PBM), filed a verified complaint on September 12, 1966, for a temporary and permanent injunction restraining defendant, who had voluntarily terminated his employment with plaintiff on September 30, 1965, from breaching an alleged provision of their written employment agreement, as follows:

"Second party [i. e., defendant] expressly covenants . . . that for a period of two years following the termination of his employment . . . he will not directly or indirectly . . . engage in the business of a professional business counselor in the City of Chicago or within fifty (50) miles of . . . Chicago . . . nor

will he solicit or accept for business any client of . . . [PBM] who is a client of record of . . . [PBM] . . . on the date of termination or within six months prior thereto."

The complaint alleges that plaintiff is in the business of counselling clients, most of whom are doctors and dentists, on business practices in their professions, including recommendations as to suitable fees, control of expenses, proper budgeting, workable credit policies, collection procedures, investments, training of personnel, purchasing, preparation of income and disbursement records and tax returns, and also offers aid in the collection of accounts receivable. It is alleged that in consideration of his employment by plaintiff, defendant executed the foregoing covenant, but thereafter voluntarily terminated his association and then, in violation of said covenant, commenced soliciting clients of plaintiff for professional business management services, by reason of which plaintiff has lost clients and has suffered and will continue to suffer irreparable injury unless defendant is enjoined. On October 11, 1966, defendant filed an answer alleging in substance that there is nothing unique in the nature of plaintiff's business; denying that the covenant aforesaid is supported by consideration; and stating certain other special defenses including that defendant learned nothing of plaintiff's business in the course of his employment except what is available to any person, with an understanding of such matters, from many available publications in professional journals; and that the names of doctors and dentists who seek such services are readily accessible from any telephone listing. On November 4, 1966, before a reply was made to the answer, but after notice and hearing, the court entered the decree, from which both parties have perfected this interlocutory appeal, granting plaintiff a temporary injunction and restraining defendant from engaging in business as a professional counselor and from soliciting any clients of

plaintiff, but limiting its effect to the City of Chicago, and a radius therefrom of fifty miles. Plaintiff claims that the territorial limitations of this injunction insofar as it relates to dealing with clients of PBM is erroneous, and that defendant should be restrained from dealing with any who were clients of PBM anywhere, if they were clients within six months of the date of plaintiff's termination. Defendant contends that the issuance of the temporary decree was wholly erroneous since it does not preserve the status quo, but grants to plaintiff the ultimate relief to which it could be entitled after full hearing for a permanent injunction; that no prima facie right to such temporary relief was shown; that the covenant involved is unsupported by consideration, was fraudulently conceived, and is plainly void, unenforceable, and contrary to antitrust laws of Illinois; and finally, that plaintiff is barred by laches.

At the time of the hearing, it appeared certain that defendant was furnishing counselling services to five persons who were former clients of plaintiff during the six months preceding defendant's termination of employment, and that two of these were outside of the territorial limitations of the temporary injunction. The proof also establishes that plaintiff is a corporation engaged in the business of counselling on accounting and business practices and procedures, the preparation of tax returns and in giving aid to clients in the collection and control of accounts receivable. Most of its clients, with whom it has only oral contractual relations terminable at the will of either, are doctors and dentists. It employs "counsellors," and it claims to train these "counsellors" in the use of special forms and books, which it admittedly designed. Defendant, at the time of his employment by plaintiff, held a bachelor's degree in education from Northern Illinois University, with a major in mathematics, a master's degree from Northwestern University in educational administration, had studied accounting by

240

correspondence courses from LaSalle Extension University, and had been employed for a number of years as an auditor to a golf club, and later, as assistant treasurer and credit manager for Hansen Scale Company, where he also performed the duties of a comptroller and office manager. He had also served as credit manager and chairman of the National Housewares Manufacturers organization. Various newspaper advertisements were received in evidence showing that plaintiff, in soliciting employees, established a college degree and knowledge and experience in accounting as employment prerequisites. Defendant testified that during his employment with plaintiff, he was supplied by PBM with certain of its publications concerning the nature or character of counselling and business and accounting practices and procedures, but that this information is available to anyone in publications of Commerce Clearing House, Prentice-Hall, other professional journals of CPA's, and Kiplinger's Letters, some or all of which deal with matters of business collection procedures, public relations, training of personnel, use of records and forms, insurance, investments, retirement plans and income tax.

■ Where an answer is filed to an application for a temporary injunction denying the material allegations of the complaint, and the legal sufficiency of such answer is unchallenged, a temporary injunction will usually not be granted unless after hearing the trial court reasonably concludes, on the basis of the evidence, that complainant will probably be entitled to the ultimate relief; that the applicant would suffer immediate and certain injury if the temporary relief requested were to be withheld; and that the granting of such protection outweighs any possible injury that might be done defendant by its issuance. See Nichols, Illinois Civil Practice, § 2285; 21 ILP, Injunctions, § 12. The scope of this review is limited to the question of whether plaintiff's showing at the hearing on the petition for temporary injunction was sufficient to

sustain the determination of the trial court. Schuler v. Wolf, 372 Ill 386, 390, 24 NE2d 162.

In determining whether a sufficient showing was made to sustain the temporary order, it is necessary to consider the question of what showing the law requires for the ultimate relief, not for the purpose of deciding whether the applicant is entitled to that, but for the limited purpose of deciding only whether he has established favorable probabilities for such ultimate relief. Chicago Motor Coach Co. v. Budd, 346 Ill App 385, 390, 105 NE2d 140. In Vander Werf v. Zunica Realty Co., 59 Ill App2d 173, 177, 208 NE2d 74, the court decided that whether a restrictive covenant of an employment contract is enforceable, or void as against public policy, depends upon whether its time and place limitations are reasonable, and whether the covenant is shown to have been reasonably necessary for the protection of the employer's business against competition by methods commonly regarded as improper and unfair. Such covenants were said to be unenforceable where their purpose appears merely to prevent competition per se. An employer, attempting to enforce such covenants, must show legitimate interests, such as trade secrets or confidential information, which reasonably need the protection of a restraint upon employees.

We conclude that the record here does not suggest the existence of any such legitimate business interests. Making defendant a "counsellor" may have offered him a different avenue for making use of his abilities, specialty or expertise, but it is a public avenue, so far as is made evident by the record, and not one to which the exclusive claims of the PBM appear justified. In The House of Vision, Inc. v. Hiyane, 37 Ill2d 32, 225 NE2d 21, the Supreme Court of Illinois held a restrictive employment covenant unenforceable where its sole purpose was, as here, to create and establish a proprietary interest in clientele. In that case the employee was a lens

242

fitter of special skill and was the principal, if not the only point of contact between the plaintiff employer and its customers, most of whom were referred by ophthalmologists. In this respect, that case is parallel to the facts in the case at bar, and seems indistinguishable in principle. Moreover, the employee there, after accepting new employment as a lens fitter, solicited business from ophthalmologists. The Supreme Court noted that the identity and location of these ophthalmologists was not a matter in which the plaintiff had a proprietary interest. It seems apparent that plaintiff, in the case at bar, could also have no proprietary interest in the identity and locations of physicians and dentists. The showing made in the record before us does not demonstrate that plaintiff has legitimate business interests of a nature requiring employee restraint, or that the danger of certain, great and irreparable injury to plaintiff from withholding temporary relief will outweigh the possible injury to defendant by granting it. What is involved is defendant's right to use his special knowledge and understanding of business and accounting practices for the purpose of earning a livelihood without moving himself and his family beyond points of contact with half the population of Illinois. The injury that will derive from denying him that right is real and apparent. It is not apparent at all that plaintiff will sustain any certain legal injury by withholding injunctive relief until a clear right to it is proved. The decree of the Circuit Court is accordingly vacated, and the cause is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

STOUDER, P. J., concurs.

ALLOY, J., concurring specially.
I concur in the result of the opinion in the above case but not with all of the reasons assigned for such opinion.

243

I feel that the case of The House of Vision, Inc. v. Hiyane, 37 Ill2d 32, 225 NE2d 21, underscores the specific basis upon which this cause should be determined, where the court says at page 39:

"To stake out unrealistic boundaries in time and space, as the employer did in this case, is to impose upon an employee the risk of proceeding at his peril, or the burden of expensive litigation to ascertain the scope of his obligation. While we do not hold that a court of equity may never modify the restraints embodied in a contract of this type and enforce them as modified, the fairness of the restraint initially imposed is a relevant consideration to a court of equity. We conclude that the restrictions in the employment contract were not reasonably necessary for the protection of the plaintiff."

The contract in the cause before us sought to establish a limitation on the employee in engaging in the business of a professional business counselor within a radius of 50 miles of the City of Chicago. While the time limitations would seem reasonable, this is not so as to the area limitation. On the basis of the record before us, it is not shown that the area restriction is reasonably necessary for protection of the plaintiff. As stated in the Hiyane case, the fact that the court had limited the application of injunctive relief thereafter to the municipal limits of the City of Chicago does not change the fact that the fairness of the restraint initially imposed did not appear to be reasonably necessary for the protection of the plaintiff. The considerations outlined in the Hiyane case, therefore, on the record shown in this cause justify withholding of injunctive relief unless a clear right to such relief is otherwise shown.