L & R Insurance Agency, Inc., a Corporation, and Golden Rule Insurance Co., a Corporation, Plaintiffs-Appellees, v. Philip K. McPhail, et al., Defendants-Appelants.

Gen. No. 66–125.

Fifth District.

February 14, 1968.

Rehearing denied April 9, 1968.

William D. Stiehl, and Dixon and McDonnell, of Belleville, for appellants.

Arthur J. Hessburg, of Lawrenceville, and John T. Roach, of Alton, for appellees.

MORAN, J.

Defendants appeal from a judgment of the Circuit Court of St. Clair County awarding the plaintiffs damages totaling $36,188.34, and enjoining them from violating a restrictive agreement for a period of three years from the dates of the termination of their respective employments.

Defendants are former employees of the plaintiff L & R Insurance Agency. McPhail worked as a salesman from October, 1958, to January, 1960. He returned to the plaintiff company in September, 1961, and remained until October, 1964. During the final year McPhail was the sales manager. Hines also had previous employment with the plaintiff, the latest period being from March, 1960, to October, 1961. On September 9, 1961, the defendants entered into separate but identical written agreements with L & R Insurance Agency. These agreements granted them the area of Madison and St. Clair Counties as their sales territory and further provided:

". . . The Second Party (defendants) agrees that if the contract between the First Party (L & R Insurance Agency) and the Second Party is terminated, that the Second Party will not solicit or sell life or accident and health insurance . . . in the State of Illinois to anyone who holds a policy in the Golden Rule Life Insurance Company or in any other company represented on an agency basis by the First

108

Party, or to anyone who has held such a policy within three months prior to such solicitation or sale."

The employment of Hines was terminated on October 1, 1961, approximately three weeks after the agreement was executed. In 1964 he became an agent for Central National Life Insurance Company. McPhail's employment with plaintiff agency terminated in October, 1964. In December, 1964, he was licensed as an agent and manager for Central. The six agents under his supervision, including Hines, were all former agents of the plaintiff, L & R.

This action was brought on December 22, 1964, to obtain injunctive relief and monetary damage from the defendants for alleged violation of these agreements. It was alleged that the defendants solicited and sold Central coverage to accounts which had been insured by the plaintiffs. Nine accounts were in question—all within the State of Illinois, five within the St. Clair and Madison County area. The amended complaint stated in part:

"11. That, commencing on or about the first week in December, 1964, and prior and subsequent thereto, and even up to the present time, defendants have illegally, maliciously and wrongfully conspired together and with other persons with the intent and for the purpose of violating their respective covenants with plaintiff agency, and with the intent and purpose of injuring the business of both plaintiffs, and with the intent and purpose of soliciting and selling Central National Life Insurance Company insurance coverage to large numbers of plaintiffs' policyholders and customers respectively."

The court ordered issuance of a temporary injunction without notice and without bond prohibiting the defendants from soliciting or selling insurance to Golden Rule policyholders and from engaging in acts or practices of

conspiring together with the intent of causing plaintiffs to lose any further business with Golden Rule policyholders pending final determination. On January 20, 1965, the court ordered the temporary injunction dissolved. The defendants then filed a Motion to Dismiss the Complaint and a Motion in Suggestion of Damages. On May 5, 1965, the court denied the Motion to Dismiss, and the Motion in Suggestion of Damages was taken under advisement pending further determination of the case. At the close of this evidence on September 30, 1965, the court again placed both defendants under injunction, pending disposition of the case.

On the 5th day of January, 1966, the trial court entered its final order and found that the covenants were valid and enforceable after imposing a three-year limitation commencing from the date of termination of employment of each defendant. Thus the covenant, as applied to Hines, would only be in effect until October, 1964, which was prior to the alleged violations. McPhail's covenant would be in effect until October, 1967. The trial court also found that the defendants knowingly and wilfully conspired, with the intent to damage the plaintiffs, to violate and did violate the covenant existing between McPhail and the plaintiffs. Defendants' Motion in Suggestion of Damages was denied. Golden Rule was awarded $28,118.59 from the defendants jointly and severally and from McPhail, individually, the sum of $2,539.15; L & R was awarded $4,983.60 from the defendants jointly and severally and $547 from McPhail individually.

The defendants contend that since the restrictive covenant was unlimited as to time and prevailing throughout the State of Illinois, it was contrary to the public policy of this state and thus void and unenforceable.

In Beltone Electronics Corp. v. Smith, 44 Ill App2d 112, 194 NE2d 21, the court, quoting from the Restatement of Contracts, stated that restrictive covenants in an em-

110

ployment contract are reasonable if (1) the restraint is no greater than that required for the protection of the employer, (2) it does not impose undue hardship on the employee, and (3) is not injurious to the public. In that case the defendant had been in an administrative position with the plaintiff company. The contract prohibited him from being employed by anyone in the manufacture or sale of hearing aids for a period of one year. The court held that due to defendant's nontechnical position and the exclusiveness of the contract, the restriction went farther than necessary to protect the plaintiff. In Solar Textiles v. Fortina, 46 Ill App2d 436, 196 NE2d 719, the employment contract specified that the employee could not engage in any similar or competitive business in the cities of Chicago or New York, or within a 350-mile radius of either city. The court held that when the contract is drawn in such a way as to restrict competition per se, the contract is void and unenforceable.

In Smithereen Co. v. Renfroe, 325 Ill App 229, 59 NE2d 545, the defendant who was a manager of the plaintiff's exterminating business, was prohibited from competing in the same business within the City of Chicago for a period of five years. The court held that such contracts are valid and enforceable when they are for a limited time, within a limited area and such limitations are reasonably necessary for the protection of the employer's business.

■ The contract in the present case had no time limitation and the area was the State of Illinois. In reference to defendant Hines there is no evidence to show that he worked outside of the St. Clair and Madison County area during the period covered by the contract. Although the finding of the trial court had no bearing on the result, it erred in finding the covenant relating to Hines was valid and enforceable. It was unreasonable as to time and area. In addition, his employment terminated

111

within three weeks after entering the contract. The restrictive covenant was not reasonably necessary to protect the plaintiffs' interests.

Since it was shown that McPhail had set up groups in Jacksonville, Springfield, Danville and Kankakee after entering the contract, plaintiffs contend that the statewide restriction was necessary to protect their interests.

In House of Vision, Inc. v. Hiyane, 37 Ill2d 32, 225 NE 2d 21, the lower court imposed a five-year limitation on a covenant which did not specify a time limit. In reversing the decision, the Supreme Court stated that while it was not holding that a court of equity could not modify the restraints in a contract of employment, the fairness of the restraint initially imposed is a relevant consideration to a court of equity. In the present case the restriction was unreasonable as to time and area. In addition, the contract specified that the defendants would not sell to anyone represented on an agency basis by L & R. Thus, after the defendants' termination of employment, the L & R Agency could begin representing some other insurance company and the defendants, by the terms of the contract, would be restricted from soliciting that new company's policyholders. Then, too, under the terms of this covenant, before the defendants could solicit insurance sales anywhere in the State of Illinois they would have to inquire as to whether the prospect had, within three months last past, been insured by any company represented by the L & R Agency, even if the solicitation took place two years after termination of their employment with the L & R Agency. This would impose an undue hardship on the employees. The restraint appears to be a device to protect the plaintiffs against competition rather than a reasonable protection of their interests. In House of Vision, supra, the court stated:

"In the present case the restrictions clearly extend far beyond those necessary to the protection of any legitimate interest of the plaintiff. . . . To stake

112

out unrealistic boundaries in time and space, as the employer did in this case, is to impose upon an employee the risk of proceeding at his peril, or the burden of expensive litigation to ascertain the scope of his obligation." Id. at 24–25.

This restriction was not necessary to protect any interest of L & R Insurance Agency for another reason. The signatories to these contracts were L & R Insurance Company and defendants. In order to enforce the contracts, L & R would have to show that the enforcement was necessary to protect the legitimate business interest of L & R. How the legitimate business interest of L & R would be protected or furthered by permitting the enforcement of this contract by Golden Rule Life Insurance Company is difficult to see. In addition, to permit enforcement of a contract that is in restraint of trade by one who is not a party to the contract would be fraught with danger and could lead to restraints of trade far beyond those which are now tolerated by law.

■ Since the restriction was void and unenforceable, the trial court could not cure the restriction by imposing a limitation on it. Therefore, the defendants could not be guilty of conspiring to violate the covenant which was void and unenforceable.

The defendants' final contention is that the court erred in denying the motion in suggestion of damages. Illinois Revised Statutes chapter 69, section 13, specifies that when an injunction is dissolved and a party claims damages by reason of the injunction, the court shall hear evidence and assess such damages as the nature of the case may require.

The temporary injunction was issued December 22, 1964, without bond. On January 22, 1965, the court, after hearing oral argument, ordered the dissolution of the temporary injunction. The defendants then filed their motion in suggestion of damages—$600 for legal services incurred in obtaining dissolution and $14,000 in lost

commissions. At the trial the defendants introduced evidence to show $600 legal fees and $145 traveling expenses for Hines. It is these two amounts that they are seeking in this appeal.

The lower court found that in view of the entire testimony and evidence that the temporary injunction was legally and validly issued and the motion in suggestion of damages should be denied.

■ Illinois Revised Statutes chapter 69, section 13, is intended to provide relief against the wrongful issuance of a temporary injunction and to provide a mode of assessing damages for the wrongful issuance of a temporary injunction which is dissolved before final judgment. Schien v. City of Virden, 5 Ill2d 494, 126 NE2d 201. The Supreme Court said in this case that a temporary injunction may be wrongfully issued even though the plaintiff prevails in his action for a permanent injunction.

> "To understandingly interpret and apply this statute it must be kept in mind that in a suit for a permanent injunction, if a temporary injunction issued prior to the determination on the merits, separate and distinct issues are involved. The issues as to issuance of the temporary injunction are not dependent upon the determination on the merits. Damages claimed under this statute are therefore based on the wrongful issuance of a temporary injunction, and cannot be assessed until there has been a legal determination that the temporary injunction was wrongfully issued. This is attained by the dissolution of the temporary injunction before the determination on the merits." Id. at 503.

■ Applying these principles to the instant case, we conclude that the trial court erred in denying the mo-

tion. The defendants are entitled to damages incurred in obtaining the dissolution.

The judgment of the Circuit Court of St. Clair County is reversed and this cause is remanded to that court with directions to enter a judgment in favor of McPhail for $300 and in favor of Hines for $445 for expenses incurred in obtaining dissolution of the temporary injunction.

Reversed and remanded with directions.

GOLDENHERSH and EBERSPACHER, JJ., concur.