Barrington Trucking Company, a Division of National Disposal Service, Inc., a Delaware Corporation, Plaintiff-Appellant, v. James Casey, Defendant-Appellee.

**Gen. No. 69–15.**

Second District.

December 1, 1969.

Vescelus, Leetz, Perry & Pollard, of Wheaton (John T. Perry, of counsel), for appellant.

Wayne and Levine, of Chicago, for appellee.

PRESIDING JUSTICE THOMAS MORAN delivered the opinion of the court.

This appeal arises from a dismissal of an amended complaint based upon an employment contract entered into between the plaintiff and defendant.

The amended complaint alleged that the plaintiff is a Delaware corporation having its principal place of business in Barrington, Illinois. It is engaged nationwide in the business of the collection and disposal of refuse, including the operation and management of sanitary landfills; that on June 1, 1966 the defendant, James Casey,

entered into a contract of employment with the plaintiff's predecessor, Barrington Trucking Company, an Illinois corporation; that the defendant was employed as a landfill supervisor for the plaintiff; that his responsibilities and duties, according to the contract of employment attached to the amended complaint, were:

"1. To inspect and give general supervision over the operation of all sanitary landfills in the Central Region.

"2. Be responsible for the recruitment and training of landfill operators.

"3. Supervise the maintenance of all landfill equipment, including recommendations on major repairs and replacements and approving all charges for repairs of landfill equipment. Prepares regular reports on each operation for the President and Division Managers, relating to the operations and condition of equipment.

"4. Is expected to research and develop new and better methods of sanitary landfill operations.

"5. On occasion will be expected to carry out other assignments for affiliated companies as assigned by the President."

Paragraph 6 of the contract, entitled "Restrictions," states:

"The Company is engaged in the refuse collection and disposal business in various cities and States and the Employee acknowledges that the Company together with its operating affiliates has achieved a leading position in the United States in the field of scientific, sanitary refuse collection and disposal. It is further acknowledged by Employee that Company has made known to Employee its methods, systems, and techniques of operation which have made Company a leader in the field of refuse col-

153

lection and disposal. Employee further acknowledges that Company has made available to Employee confidential information respecting the organization and management of Company and its operating affiliates together with confidential customer lists, customer contacts and other confidential information relating to Company. In consideration of the foregoing, the Employee hereby covenants and agrees with the Company that he will not, during the life of this contract nor within three years after its termination, for any cause whatsoever, whether with or without his fault, engage or become engaged, directly or indirectly, in the refuse collection and disposal business, either as principal, partner, agent, employee, or as a director, or officer, of any corporation or association, or in any other manner or capacity whatever, *in any area or territory in any State in which the Company or any of its subsidiaries or operating affiliates may be engaged in such business or may be actively soliciting such business at the time of termination of this contract.*" (Empasis added.)

The amended complaint went on to state that from June 1, 1966, until on or about September 27, 1968, the defendant acted as a sanitary landfill supervisor for the plaintiff, at the landfill site located north of Elgin, Illinois, and at other landfills operated by the plaintiff located in various areas in the midwest United States; that shortly after September 27, 1968, the defendant entered into an agreement with the Tri-County Landfill Co., which purported to engage the defendant in the capacity of an independent contractor to conduct a sanitary landfill operation on its premises located south of Elgin; that the defendant was supplied with "confidential information" which included plaintiff's customers, leases, royalty agreements, operating costs, profit and

154

loss statements, methods and techniques of planning and operating its sanitary landfills; and that unless the defendant is enjoined from competing with it, the plaintiff will suffer irreparable injury. There is no allegation that affirmatively charges the defendant with disclosing or using any of the "confidential information" furnished to him.

Suit was filed to enjoin the defendant. On October 14, 1968, plaintiff's motion for a temporary injunction was denied and the plaintiff was granted leave to file an amended complaint. The defendant filed a motion to dismiss the amended complaint which raised, inter alia, the issue of whether or not the area of restriction was unreasonable. The motion to dismiss was allowed on November 13, 1968.

■ ■ If enforced, the contract would prohibit the defendant from pursuing his occupation in many undefined areas throughout the United States since it is alleged that the defendant acted as supervisor not only at the Elgin site but at "various areas of the midwest in the United States." It has almost uniformly been held that excluding service occupations from an entire state by a restrictive covenant is unreasonable. The rationale of such cases is that the employee should be excluded only from territory in which, as a result of his employment, he was able to establish a certain relationship with the employer's customers. (Central Keystone Plating of Illinois, Inc. v. Hutchison, 62 Ill App2d 188, 192, 210 NE2d 239 (1965).)

In the present case, there is no allegation that the employee has interfered with the plaintiff's customer relations but simply that he is "in direct and immediate competition with plaintiff's sanitary landfill operation."

■ Covenants, ancillary to an employment contract, restricting employees or agents from unreasonable competition with a former employer are permissible and are not, per se, contrary to public policy. The rule in

this State, as well as most jurisdictions, is that the covenant must be reasonable as to the employee, the employer and the public. Reasonableness is to be determined from the facts and circumstances of each case and of necessity varies as to area, time and the respective interests of the parties, as well as the degree of fiduciary or confidential relationship existing between them. Central Keystone Plating of Illinois, Inc. v. Hutchison, supra. Whether the contract under consideration is reasonable or contrary to public policy is a question of law. Tarr v. Stearman, 264 Ill 110, 118–119, 105 NE 957 (1914). A covenant against competition will be upheld if the restraint on trade is reasonable in terms of time and territory, with the question of reasonableness depending on the circumstances of each case. The Vendo Co. v. Stoner, 105 Ill App2d 261, 281, 245 NE2d 263 (1969).

■ This court is not unmindful of the fact that a court of equity may, under some circumstances, modify the restraint in a contract of employment; however, the fairness of the restraint initially imposed is a relevant consideration to a court of equity. House of Vision, Inc. v. Hiyane, 37 Ill2d 32, 39, 225 NE2d 21 (1967); L. & R. Ins. Agency, Inc. v. McPhail, 92 Ill App2d 107, 112, 235 NE2d 153 (1968).

The restrictions in the contract in question do not simply restrain the defendant from competing with his former employer, but prohibit him from "directly or indirectly . . . in any other manner or capacity whatsoever . . . whether with or without his fault" having any connection with any refuse collection or disposal business "in any area or territory in any State in which the Company or any of its subsidiaries or operating affiliates may be engaged in such business or may be actively soliciting such business at the time of termination

156

of this contract." In order for the defendant to seek employment after leaving the plaintiff, under the terms of this contract it seems that he would be required to ascertain from the plaintiff whether it, its subsidiaries or its "operating affiliates" are either engaged in business in a certain area or actively soliciting such business in such area. None of the foregoing would have any relevancy to the question of whether or not the defendant had established any relationships with the plaintiff's customers.

The foregoing restrictions as to space and area impose upon the employee the risk of proceeding at his peril, or the burden of expensive litigation, to ascertain the scope of his obligation without regard to whether or not the restraint imposed is greater than reasonably necessary to protect the employer. House of Vision, Inc. v. Hiyane, supra. We are of the opinion that the area covered by the employment contract was unreasonable and, therefore, the contract is void.

In addition, it should be noted that the complaint herein alleges that the defendant was furnished confidential customer lists and other confidential information. Although the complaint claims a breach of contract, nowhere is there any allegation of fact as to how or in what manner this breach occurred. There is no allegation that the defendant has used any of the confidential matter supposedly furnished to him.

For the above reasons the judgment of the trial court is affirmed.

Judgment affirmed.

ABRAHAMSON and SEIDENFELD, JJ., concur.